William E. EVANS, Plaintiff,

v.

The SCHOOL DISTRICT OF KANSAS CITY, MISSOURI, Defendant.

No. 92–0630–CV–W–3.

United States District Court,
W.D. Missouri,
Western Division.

Aug. 25, 1994.

Samuel I. McHenry, Legal Aid of Western Missouri, William Earl Evans, Kansas City, MO, for William Earl Evans.

Maurice A. Watson, Blackwell, Sanders, Matheny, Weary & Lombardi, Herbert Victor White, Jr., Kansas City, MO, for Kansas City, Missouri School Dist.

Donald R. Aubry, Jolley, Walsh & Hager, P.C., Kansas City, MO, for American Federation of Teachers, Local 691.

## MEMORANDUM OPINION AND ORDER

ELMO B. HUNTER, Senior District Judge.

This is a case of race discrimination and retaliation brought pursuant to Title VII, 42 U.S.C. § 1981, and the Missouri Human Rights Act (MHRA). In a trial commencing June 13, 1994, the Section 1981 and MHRA claims were tried to a jury and the Title VII claim was tried to the Court. The jury returned a verdict in favor of the Plaintiff William E. Evans ("Evans") on the retaliation claim for $25,002.00 and in favor of defendant The School District of Kansas City Missouri ("School District") on the race discrimination claim.

The Court now finds that Plaintiff also was discriminated against in the form of illegal retaliation pursuant to Title VII. This finding is made of the Court's own independent view of the facts, although on common issues of fact, the Court is bound by the jury's findings.[1] See Fray v. Omaha World Herald Co., 960 F.2d 1370, 1378 (8th Cir.1992); Jiles v. Ingram, 944 F.2d 409, 413 (8th Cir.1991). This Court's findings of fact and conclusions of law follow.

## I. CONCLUSIONS OF LAW

This Court has jurisdiction over Plaintiff's Title VII claim pursuant to 42 U.S.C. § 2000e–5(f). Venue is proper in this district pursuant to 28 U.S.C. § 1391.

Plaintiff Evans was an employee of Defendant School District as that term is defined by Title VII. Defendant is an employer within the meaning of that term as provided by Title VII. Plaintiff has satisfied all statutory prerequisites for bringing this Title VII civil action.

## II. FINDINGS OF FACT

Evans is an adult African–American male. He received his bachelor's degree in 1985 and became licensed to teach in the State of Tennessee that same year. After working as

---

1. Pursuant to the parties' agreement before trial, all legal and equitable claims in the above-styled action were tried together to a jury. The parties further agreed that the jury's verdict would govern the factual issues common to all claims.

a substitute teacher for several years, the School District employed Evans in August 1988. The School District assigned Evans to Southeast Magnet High School as a music teacher.

In January 1991, Dr. Curtis Cooper ("Cooper") was employed by the School District as principal of Southeast Magnet High School. At Cooper's first developmental staff meeting with teachers and administrators, Cooper presented his vision and plans for the school to the staff. Plaintiff took exception to several of Cooper's remarks as racially insensitive and openly criticized them as such during the meeting.

On March 6, 1991, Cooper directed Evans to submit both long and short-term lesson plans to him by March 8, 1991. Cooper did not direct any other teacher to submit short-term lesson plans at that time. Upon receiving Cooper's request for lesson plans, Evans wrote a memorandum dated March 8, 1991, to Cooper in which he charged Cooper with race discrimination and harassment based on Evans' criticisms of Cooper at the developmental meeting. Evans subsequently complained to the association representing the School District teachers, the American Federation of Teachers (AFT), about Cooper's requirement that he submit short-term lesson plans.

On March 21, 1991, a meeting took place between Evans, Cooper, and Kathleen Reed ("Reed"), Plaintiff's union representative, for the purpose of discussing Cooper's directive that Evans submit weekly lesson plans. In April 1991, the School Board voted not to renew Evans' teaching contract for the following year although Plaintiff's Teacher Performance Evaluations for all three years of service at Southeast High School reveal an overall performance that met requisite performance standards. Further, Plaintiff's Evaluation for the period from November 19, 1990, through January 11, 1991, three months before he was notified his contract

would not be renewed, indicates he met the requisite performance standards in both planning and classroom management.[2]

Notably, the School District alleges non-renewal of Evans' employment was based on failure to plan and insubordination, while Plaintiff asserts that non-renewal was a result of his race as well as retaliation for his complaints concerning the School District's racially discriminatory and insensitive treatment of its black students and staff.

## III. RACIAL DISCRIMINATION

As a preliminary matter, Section 703(a)(1) of Title VII provides in pertinent part:

It shall be an unlawful employment practice for an employer to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). The United States Supreme Court has outlined a framework for the orderly presentation and evaluation of evidence in discrimination cases such as the one here: (1) plaintiff must establish a prima facie case which then raises a rebuttable presumption of unlawful discrimination; (2) defendant must then rebut the presumption by articulating a legitimate, nondiscriminatory reason for the employment decision; and (3) once the defendant meets this burden, plaintiff must then prove by a preponderance of the evidence that defendant's proffered reason was not the real reason but merely a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

---

**2.** Although there is no specific category on the Kansas City, Missouri Teacher's Performance Evaluation for "classroom management," the Court concludes that the categories of "student relationships" and "climate" encompass the concept of classroom management. Plaintiff has consistently met the School District's perfor-

mance standards in these two areas over the last three years.

The only area in which Plaintiff failed to meet the requisite performance standard in any area over the course of his three years with the School District was on one occasion, in the area of organization.

The Supreme Court has recently modified this framework in that solely establishing a defendant's proffered reason was pretextual neither compels nor guarantees a verdict in favor of the plaintiff unless the trier of fact further makes a finding of unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

## A. The Prima Facie Case

A plaintiff may establish a prima facie case of intentional discrimination by showing "(1) that he belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824.[3]

In light of the above-found facts, this Court **CONCLUDES** that Plaintiff established a prima facie case of race discrimination.

## B. Race–Neutral Reason for Failure to Hire

██ Once the plaintiff establishes a prima facie case, defendant must "articulate some legitimate, non-discriminatory reason for the employee's rejection." *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. Put another way, the defendant must clearly set forth reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749.

██ At trial, the School District introduced as evidence several written reprimands from Cooper to Evans for failure to comply with Cooper's directive to provide him copies of short-term lesson plans. (Plaintiff's Exhibits 8, 11, 12, and 15). Further, the School District introduced into evidence at trial a written reprimand from Coo-

per to Evans for insubordination. (Plaintiff's Exhibit 14). Based on this evidence, the School District contends that the legitimate, non-discriminatory reasons for refusing to renew Plaintiff's teaching contract were that (1) he failed to plan properly for instruction in the classroom; (2) he refused to submit weekly lesson plans repeatedly requested by the principal; and (3) he demonstrated flagrant disrespect and contempt for the authority of his supervisor. This Court finds that the School District has supplied sufficient evidence of non-discriminatory reasons for choosing not to renew Plaintiff's contract.

In light of the above-found facts, this Court **CONCLUDES** that the Defendant successfully rebutted Plaintiff's prima facie case.

## C. Pretext

██ Once the defendant successfully rebuts plaintiff's prima facie case, plaintiff must then prove by a preponderance of the evidence that defendant's proffered reason was not the real reason, but merely a pretext, for discrimination. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. Plaintiff asserted at trial that the School District's grounds for refusing to renew his contract are pretextual because he consistently met requisite performance standards in planning and classroom management over the course of his three years at Southeast High School. In support of this assertion, Plaintiff introduced into evidence his Teacher Performance Evaluations, including his Evaluation for the period from November 19, 1990, through January 11, 1991, just two months before he was requested to submit weekly lesson plans based on alleged inadequacies, and only three months before he was notified his contract would not be renewed due to poor planning and classroom management. The fact that the principal of the school would demand lesson plans from Plaintiff for substandard performance after three years of consistent and satisfactory evaluations and just two months after a formal evaluation reflecting satisfactory performance, and the

---

**3.** "The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that [he] applied for an available position, for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

fact that the School District would subsequently refuse to renew Plaintiff's teaching contract for this substandard performance the following month, both support a finding that the School District's claims of substandard performance are pretextual.

In addition to poor planning and classroom management, Defendant presented evidence, through the testimony of Cooper, that Plaintiff was insubordinate. Cooper testified that Plaintiff was insubordinate first, when Plaintiff failed to submit requested lesson plans, and second, when Plaintiff displayed disrespect for Cooper by directing profanity at him after the March 21, 1991, meeting that took place between Evans, Cooper, and Reed for the purpose of discussing Cooper's order that Evans submit weekly lesson plans. As a result, the School District asserts insubordination is also a legitimate non-discriminatory reason for refusing to renew Plaintiff's teaching contract.

Notably, Reed's testimony at trial directly contradicts Cooper's testimony. Reed testified that, although she was present at the end of the meeting and standing near Cooper, she never heard Evans speak the alleged profanity. Reed further testified that in this meeting, held approximately three weeks before the School District refused to renew Plaintiff's teaching contract, Cooper voluntarily withdrew his request for Plaintiff's short-term lesson plans based on Reed's advice that he could not target just one teacher in this request. This Court finds Reed's testimony both credible and persuasive, giving support to the finding that the School District's claim of insubordination is also pretextual.

Based on the above discussion, this Court **CONCLUDES** that Plaintiff has successfully shown by a preponderance of the evidence that Defendant's proffered reasons of substandard performance and insubordination were not the real reasons for failure to renew Plaintiff's contract, but merely a pretext for discrimination.

**D. Plaintiff's Ultimate Burden of Proof**

■ In light of the Supreme Court's recent decision in *Hicks*, even though Plaintiff has succeeded in proving by a preponderance of the evidence that the School District's

articulated non-discriminatory reasons for failing to renew his contract were pretextual, Plaintiff still has the ultimate burden of persuading the trier of fact that the decision not to offer him a contract was racially motivated. *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749. Absent a finding of unlawful discrimination by the trier of fact, Plaintiff cannot prevail. *Id.*

■ Evans supplies no additional evidence that the School District's decision not to offer him a new contract was based on discrimination. His prima facie case, standing alone, is not sufficient to carry the day. In light of this finding, Evans has failed to prove, and this Court cannot find, that the decision not to offer him a new contract was motivated by race as required by *Hicks. Id.* Accordingly, Plaintiff is not entitled to judgment in his Title VII racial discrimination claim.

## IV. RETALIATION

In his second Title VII claim, Plaintiff alleges that the School District refused to renew his teaching contract in retaliation for Plaintiff's complaints concerning the School District's racially discriminatory and insensitive treatment of its black students and staff.

■ Section 704(a) of Title VII provides in pertinent part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter.

42 U.S.C. § 2000e–3(a). This Court notes that the Eighth Circuit Court of Appeals applies the same order and allocation of proof to those cases alleging retaliation for participation in Title VII processes as it does for Title VII intentional discrimination suits. *See Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir.1980), *cert. denied* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981) (citations omitted). Therefore, once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to produce some legitimate nondiscriminatory reason for the adverse employment decision. *See id.*

If the employer satisfies the burden, the plaintiff must prove by a preponderance of the evidence that the proffered reason is a pretext for retaliation. *See id.* Further, plaintiff must finally persuade the trier of fact that the decision not to offer him a contract was racially motivated. *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749.

## A. The Prima Facie Case

■ To establish a prima facie case of retaliatory discrimination a plaintiff must show: (1) he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal connection existed between participation in the protected activity and the adverse employment action. *Wentz v. Maryland Casualty Co.,* 869 F.2d 1153, 1154–55 (8th Cir.1989); *McDaniel v. Temple Independent School Dist.,* 770 F.2d 1340, 1346 (5th Cir.1985).

■ The Title VII prohibition against retaliatory discrimination protects activities ranging from the filing of a formal complaint to expressing a belief that the employer has engaged in discriminatory practices. *See, e.g., Wentz,* 869 F.2d at 1153; *Wrighten v. Metropolitan Hospitals, Inc.,* 726 F.2d 1346 (9th Cir.1984); *Womack v. Munson,* 619 F.2d at 1292; *Berg v. La Crosse Cooler Co.,* 612 F.2d 1041 (7th Cir.1980); *Coleman v. Wayne State University,* 664 F.Supp. 1082 (E.D.Mich.1987). Plaintiff asserts that his teaching contract was not renewed in retaliation for complaints about the School District's racially discriminatory and insensitive treatment of its black students *and staff* to Cooper. *See* Plaintiff's Amended Complaint at p. 3, ¶ 9 (emphasis added). Based on the cited authority and the nature of Plaintiff's grievance as it relates to his working conditions, this Court holds that Plaintiff's complaint to the School District regarding its racially discriminatory and insensitive treatment of black students and staff meets the requisite showing that he engaged in activity protected by Title VII. Further, Plaintiff has met the second prong of the prima facie retaliation case because non-renewal of Plaintiff's teaching contract qualifies as an adverse employment action.

■ Lastly, this Court finds a causal connection existed between participation in the protected activity and the adverse employment action. The requisite causal link is more than established by the closeness in time between Plaintiff's complaints and the institution of Cooper's campaign of "reprimands." *Kralowec v. Prince George's County,* 503 F.Supp. 985 (D.Md.1980), *aff'd. mem.* 679 F.2d 883 (4th Cir.), *cert. denied,* 459 U.S. 872, 103 S.Ct. 159, 74 L.Ed.2d 132 (1982); *Goodwin v. Pittsburgh,* 480 F.Supp. 627 (W.D.Pa.1979), *aff'd. mem.* 624 F.2d 1090 (3d Cir.1980). A causal connection may be demonstrated indirectly by evidence of circumstances that justify an inference of retaliatory motive, such as a showing that the employer has actual or imputed knowledge of the protected activity and the adverse employment action follows closely in time. *See Rath v. Selection Research, Inc.* 978 F.2d 1087, 1090 (8th Cir.1992); *Couty v. Dole,* 886 F.2d 147, 148 (8th Cir.1989).

In light of the above-found facts, this Court **CONCLUDES** that Plaintiff has carried his initial burden in establishing a prima facie case of retaliation.

## B. Race–Neutral Reason for Failure to Hire

Again, once the plaintiff establishes a prima facie case, defendant must "articulate some legitimate, non-discriminatory reason for the employee's rejection." *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. Based on the discussion in Section IB, *supra,* this Court again finds that the School District articulated legitimate, nondiscriminatory reasons for refusing to renew Plaintiff's teaching contract. In light of this finding, this Court **CONCLUDES** that the School District successfully rebutted Plaintiff's prima facie case of retaliation.

## C. Pretext

Once the defendant successfully rebuts plaintiff's prima facie case, plaintiff must then prove by a preponderance of the evidence that defendant's proffered reason was not the real reason, but merely a pretext for discrimination. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. Based on the discussion in Section IC, *supra,* this Court again finds that the Plaintiff has proved by a preponderance

of the evidence that Defendant's proffered reasons of substandard performance and insubordination were not the real reasons for failure to renew Plaintiff's contract, but merely a pretext for discrimination.

### D. Plaintiff's Ultimate Burden of Proof

 As the Court identified in Section ID, *supra,* although Plaintiff has succeeded in proving by a preponderance of the evidence that the School District's articulated non-discriminatory reasons for failing to renew his contract were pretextual, Plaintiff still has the ultimate burden of persuading the trier of fact that the decision not to offer him a contract was motivated by retaliation in violation of Title VII. *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749. For the following reasons, this Court concludes Plaintiff has met this burden.

Evans presented persuasive evidence at trial that he consistently met requisite performance standards over the course of his three years at Southeast High School, as reflected by the Teacher Performance Evaluations introduced by Plaintiff into evidence, including his Evaluation for the period from November 19, 1990, through January 11, 1991, just two months before he was requested to submit weekly lesson plans based on alleged inadequacies, and only three months before he was notified his contract would not be renewed due to poor planning and classroom management. Further, Evans introduced the testimony of witnesses present at Cooper's first developmental staff meeting where Plaintiff took exception to several of Cooper's remarks as racially insensitive and openly criticized them as such during the meeting. These witnesses testified that Cooper seemed extremely annoyed and agitated in his reaction to Evans' allegations that his visions and plans for the students and staff were racially insensitive. In light of these facts, this Court further finds the closeness in time between Plaintiff's complaints and the institution of Cooper's campaign of "reprimands," which ultimately resulted in failure by the School District to rehire, is persuasive evidence of the alleged retaliation. Accordingly, this Court CONCLUDES, as did the jury in the 42 U.S.C. § 1981 and MHRA claims, that Evans ultimately has proved that reprimands by Cooper, as well as the ultimate decision not to offer Plaintiff a new contract, were both motivated by retaliation.

Accordingly, Plaintiff is entitled to judgment in his Title VII retaliation claim. This Court finds, however, the jury's award of $25,000 for actual damages, including back pay, is sufficient monetary relief for the School District's unlawful discrimination and thus no additional monetary relief is granted under Title VII.

### V. RELIEF

Evans has requested relief from the School District in the form of (1) reinstatement; (2) a permanent injunction enjoining the District from continuing to discriminate against Plaintiff because of his race or in retaliation; (3) compensatory damages; (4) back pay; (5) punitive damages; and (6) attorney's fees.

 As a preliminary matter, Title VII of the Civil Rights Act of 1964, as amended,[4] states in pertinent part:

> If the court finds that respondent has intentionally engaged in ... an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement.

42 U.S.C. § 2000e–5(g). A district court is vested with sound discretion to decide whether to award reinstatement as equitable relief. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975); *Taylor v. Teletype Corp.,* 648 F.2d 1129, 1138 (8th Cir.), *cert. denied* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981). To the extent possible, a district court should seek "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle,* 422 U.S. at 418, 95 S.Ct. at 2372. Reinstatement is such a basic element of Title VII relief that granting such relief is presumed appropriate and, ex-

---

**4.** The 1991 amendments to the Civil Rights Act were not effective until after Plaintiff's employ-

ment with the School District was terminated and therefore are not applicable to this case.

cept in extraordinary cases, is required. *Weaver v. Casa Gallardo Inc.,* 922 F.2d 1515 (11th Cir.1991); *Darnell v. Jasper,* 730 F.2d 653 (11th Cir.1984).

 Further, a court may refuse equitable relief, including compelling employment of plaintiff, " 'only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.' " *Albemarle,* 422 U.S. at 421, 95 S.Ct. at 2373. Accordingly, a district court must "carefully articulate" its rationale for refusing to compel employment of a plaintiff who has suffered discrimination. 422 U.S. at 421, n. 14, 95 S.Ct. at 2373, n. 14.

Notably, those cases in which courts have declined to reinstate injured plaintiffs have frequently involved high level and unique positions or evidence of extreme animosity between plaintiff and defendant employers. *See, e.g., Cancellier v. Federated Department Stores,* 672 F.2d 1312 (9th Cir.), *cert. denied* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982) (holding plaintiff and defendant employer could no longer exist in a productive business relationship); *Hoffman v. Nissan Motor Corp.,* 511 F.Supp. 352, 355 (D.N.H. 1981) (concluding reinstatement of plaintiff "would be a harbinger of disaster"); *Combes v. Griffin Television, Inc.,* 421 F.Supp. 841, 846 (W.D.Okla.1976) (finding discord, tension, suspicion, antagonism and sensitivity would create a very difficult employment environment if plaintiff were reinstated); *EEOC v. Kallir, Philips, Ross, Inc.,* 420 F.Supp. 919, 926–27 (S.D.N.Y.1976), *aff'd. mem.* 559 F.2d 1203 (2d Cir.), *cert. denied,* 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977) (plaintiff's former job "required a close working relationship [with] top executives of defendant" and "involved frequent personal contact with defendant's clients, with plaintiff acting as defendant's representative").

 It appears to this Court that reinstating Plaintiff as a teacher does not involve a high level or unique position within the School District. Further, now that Cooper is no longer employed by the School District, the likelihood that extreme animosity between Plaintiff and Defendant would exist upon reinstatement is remote.[5] Accordingly, in the attempt to make Plaintiff whole for injuries suffered on account of unlawful employment discrimination, the School District shall rehire Plaintiff to his former position, or one that is equivalent to the position, of high school music teacher.[6]

 Plaintiff also requests the Court to enjoin the School District from continuing to discriminate against Plaintiff because of his race or in retaliation. Injunctive relief generally should be granted in Title VII cases unless there is no reasonable expectation that the discriminatory conduct will recur, *United States v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), or if interim events have "completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Notably, Cooper is no longer employed by the School District. Based on Cooper's departure, this Court concludes that there is no reasonable expectation that the discriminatory conduct will recur when Evans is once again employed by the School District. Consequently, Plaintiff is denied injunctive relief.

Although compensatory damages have been requested by Plaintiff, this Court, as did the jury on Plaintiff's Section 1981 and MHRA claims, finds Plaintiff failed to present sufficient evidence of mental anguish, humiliation, embarrassment and stress to justify more than a nominal award of $1.00 for compensatory damages. As a result, this

5. Friction arising from the litigation process itself is not sufficient enough to deny employment since "a court might deny [employment] in virtually every case if it considered the hostility engendered from litigation as a bar to relief." *Taylor,* 648 F.2d at 1139.

6. For other decisions compelling reemployment, see *Taylor,* 648 F.2d at 1139; *Harper v. General Grocers Co.,* 590 F.2d 713 (8th Cir.1979); *Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109 (4th Cir.), *cert. denied* 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981); *Cline v. Roadway Express, Inc.,* 689 F.2d 481 (4th Cir.1982).

Court finds the jury's award for compensatory damages is sufficient relief.

 Plaintiff also requests punitive damages in his Amended Complaint. It is well settled that, prior to passage of the Civil Rights Act of 1991, punitive damages were not available to a Plaintiff seeking redress under Title VII, regardless of whether the defendant was a governmental entity. Because the 1991 amendments to the Civil Rights Act were not effective until after Plaintiff's employment with the School District was terminated, *see Lee v. Trans World Airlines, Inc.,* 509 F.Supp. 1182, 1186 (W.D.Mo.1981), punitive damages are not available to Plaintiff in his Title VII claim.

 Lastly, a prevailing party in an action brought under Title VII may be awarded attorney's fees in the Court's discretion. 42 U.S.C. § 2000e–5(k). While discretionary language is used in the statute, prevailing plaintiffs are essentially entitled to attorney's fees unless special circumstances would render such an award unjust in light of Congressional goals underlying enforcement of fee awards in civil rights litigation. *Lyte v. Sara Lee Corp.,* 950 F.2d 101 (2d Cir.1991). No such circumstances exist in this case. Plaintiff's counsel, therefore, is required to submit an application for reasonable attorney's fees within twenty days of the date of this Order.

Accordingly, it is hereby ORDERED that

1) judgment be entered in favor of the Plaintiff on the issue of liability on his Title VII claim (Count I);

2) Plaintiff shall be reinstated to the position of music teacher in the Kansas City, Missouri School District, or some other similar position;

3) Plaintiff shall submit a request for fees within twenty days of the date of this Order to which the Defendant shall file a response within five days of the date that request is filed; and

4) the Clerk of the Court is directed to enter judgment in this matter pursuant to Rule 58 of the Federal Rules of Civil Procedure on Counts Two and Three.

**IT IS SO ORDERED.**