William Earl **EVANS, Plaintiff/Appellee,**

v.

**The KANSAS CITY, MISSOURI SCHOOL DISTRICT; Defendant/Appellant,**

**American Federation of Teachers, Local 691, Defendant.**

No. 95–1340.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1995.

Decided Sept. 6, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 24, 1995.

Maurice Watson, Kansas City, MO, argued (Mary Elizabeth Metz, on the brief), for appellant.

Samuel McHenry, Kansas City, MO, argued, for appellee.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

The Kansas City School District appeals from the judgment entered on a finding that it unlawfully retaliated against William E. Evans in refusing to renew his teaching contract for the 1991–92 school year. We reverse.

### I.

After teaching as a substitute for several years in Omaha, Nebraska, Evans was offered a position as a band and choir teacher at Southeast High School in August 1988. Evans continued in that position until June 30, 1991. Each year prior to his non-renewal, Evans was reviewed as warranting renewed employment.

In January 1991, Dr. Curtis Cooper became principal of Southeast High. Southeast was to become a magnet school with a focus on health professions and international stud-

ies as part of the remedial desegregation decree under which the district was operating. *See Jenkins v. Missouri,* 639 F.Supp. 19 (W.D.Mo.1986) (subsequent history omitted). Doctor Cooper was brought in as principal in part because he had been involved in administering similar magnet school programs in California. At his first staff meeting, Dr. Cooper expressed his views on how the school could increase its non-minority student population and achieve its magnet goals. Doctor Cooper stated that the staff would be required to assist in implementing the magnet program and diversifying the student body.

Evans spoke up at the meeting, criticizing Dr. Cooper's plan as disregarding the needs of the incumbent Southeast student body, which was more than 98% black. Evans also took issue with Dr. Cooper's statement that he hoped that Southeast would become a "Camelot," deeming it a racially insensitive remark. Evans asserts that following the voicing of his complaints, Dr. Cooper began discriminating against him through frequent visits to his classroom and criticism of his teaching skills. Doctor Cooper then began to require long and short-term lesson plans from Evans, despite the fact that no other teachers were required to submit short-term plans.[1] Evans subsequently filed several complaints with the teachers' union about the requirement that he prepare lesson plans. In April 1991, following Dr. Cooper's recommendation, the school board voted to not renew Evans' teaching contract for the 1991–92 school year.[2]

Evans filed suit, alleging race discrimination and unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e–3(a); 42 U.S.C. § 1981; and the Missouri Human Rights Act, Mo.Rev.Stat. § 213.010 *et seq.* The state law and section 1981 claims were submitted to a jury following a four day trial, with the Title VII claims reserved for the bench. The jury

found in favor of the school district on the race discrimination claims, but found in favor of Evans on the retaliation claims. The district court similarly found for Evans on the retaliation claims and against him on his race discrimination claims. Evans was awarded $25,002 in damages and reinstatement to a teaching position. *Evans v. School Dist. of Kansas City, Mo.,* 861 F.Supp. 851 (W.D.Mo. 1994).

## II.

The school district contends that Evans cannot recover on his retaliation claims because his conduct was not protected by Title VII, section 1981, or the Missouri Human Rights Act.[3] To establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in statutorily protected activity; (2) an adverse employment action; and (3) a causal connection between the adverse employment action and the protected activity. *Wentz v. Maryland Casualty Co.,* 869 F.2d 1153, 1154–55 (8th Cir.1989); *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir.1980), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981). Title VII provides that an employer may not discriminate against an employee on the basis that the employee "has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e–3(a). Thus our initial inquiry turns on whether the school district had engaged in any "unlawful employment practice," Evans' opposition to which was statutorily protected.

To demonstrate the presence of protected opposition, a plaintiff must show a good faith reasonable belief that his employer engaged in a discriminatory employment practice. *Sisco v. J.S. Alberici Constr. Co.,* 655 F.2d 146, 150 (8th Cir.1981) (subsequent history omitted); *see Berg v. La Crosse Cooler Co.,* 612 F.2d 1041, 1045 (7th Cir.1980). Here,

---

1. Dale Hudson, a white male, was also eventually required to submit lesson plans to Dr. Cooper, but this requirement was instituted after Evans' initial complaints.

2. Doctor Cooper himself resigned effective June 30, 1993, after being told that his contract would not be renewed, this as a result of protests by certain of the black students and their parents.

3. The Missouri Human Rights Act and Title VII apply the same analysis to the retaliation claim. *See Sweeney v. City of Ladue,* 25 F.3d 702, 703 (8th Cir.1994); *Finley v. Empiregas, Inc.,* 975 F.2d 467, 473 (8th Cir.1992).

however, the genesis of Evans' claims lies not with any allegation of a discriminatory employment practice, but rather with an allegation that Doctor Cooper's efforts to comply with a desegregation directive disregarded the needs of the black student population of Southeast. Rather than relating to the terms and conditions of Evans' employment, this initial protest at the staff meeting in which Dr. Cooper unveiled his plan for the school pertained to Evans' conflicting vision for the school. Title VII is not a "bad acts" statute. *Crowley v. Prince George's County,* 890 F.2d 683, 687 (4th Cir.1989) (subsequent history omitted). Doctor Cooper's directives to the faculty and staff of Southeast related to concerns about the school's responsibility to the student body and not to employment practices. *See id.; see also Jamil v. Secretary of Defense,* 910 F.2d 1203, 1207 (4th Cir.1990) (opposition to employer action not constituting an employment practice is unprotected under Title VII).

Doctor Cooper's announced course of action with respect to the magnet school program reflected his intention to comply with the district court's desegregation order. Evans was aware of the desegregation order and magnet program, and thus he cannot avoid scrutiny of his claims by relying on an asserted reasonable belief that his allegations were justified. To the extent that Evans claims a belief that he and the rest of the staff would be required to discriminate, such a belief was simply unfounded and unreasonable in the light of the district court's sweeping desegregation order. Evans could not reasonably believe that the faculty would be excused from complying with a lawfully required directive.

Some racial tension apparently existed among the faculty before Dr. Cooper came on board, and Evans expressed concern that Dr. Cooper's plans would not only weaken the strong African–American heritage of Southeast but would also further fragment the staff. Such a concern adds nothing to the claim of unlawful employment action, however, because Dr. Cooper's proposed course of action was in direct conformity with the desegregation order. Likewise, the innocuous reference to "Camelot," given the

school's tradition and symbolism, fails to establish Evans' claims as reasonable. Whatever ill-will Dr. Cooper displayed towards Evans as a result of Evans' complaints is simply not remediable under Title VII.

### III.

■ Although "[s]ection 1981 has no specific retaliation provision," *Sisco,* 655 F.2d at 150, we have recognized that it does encompass "allegations of retaliatory conduct" in a racial discrimination context. *Setser v. Novack Inv. Co.,* 638 F.2d 1137, 1147 (8th Cir. 1981) (subsequent history omitted); *see Sisco,* 655 F.2d at 150. Evans has failed, however, to sufficiently establish this claim as well.

■ Much of the analysis of a retaliation claim under section 1981 is similar to that under Title VII. Evans argues, however, that section 1981 is broader and encompasses actions that do not fall within the rubric of the employment relationship. Evans, however, is not the proper plaintiff to bring such an action on behalf of the students. The rights of the student body in such a situation must be asserted by an individual whose rights are directly affected by the challenged action, i.e., a student or parent of a student. *See Mackey v. Nationwide Ins. Companies,* 724 F.2d 419, 421–22 (4th Cir.1984). Evans' opposition to Dr. Cooper's plans for complying with the district court's desegregation order cannot by any stretch of the imagination be equated with the filing of a lawsuit alleging the physical abuse of prisoners, held in *Womack* to be a protected activity. Accordingly, Evans fails to satisfy the requirements of section 1981 in the same manner that he has failed to satisfy Title VII and the Missouri Human Rights Act.

### IV.

■ A school's principal is so called because of the authority vested in that position. Evans' dissatisfaction with the manner in which the district court's remedial decree was to be complied with was not protected activity. The authority of the principal and the school administration would be seriously undermined if members of the staff were

able to contest every administrative action that struck a dissonant note with their personal views. "An employee is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir.1989). Here, no matter how one approaches this case, Evans "was not contesting any unlawful employment practice; he was contesting the correctness of a decision made by his employer." *Id.* at 1313. Whatever rights Evans may have had under the provisions of state law governing nonrenewal of teacher contracts, they do not rise to the level of a claim under Title VII, section 1981, or the Missouri Human Rights Act.

The judgment is reversed, and the case is remanded to the district court with directions to dismiss the complaint.