Nos. 95-2873/2875/3170/3288

Pauline Brine,                          *
Elizabeth Pelton,                       *
and Nancy Thompson,                     *
                                        *
      Appellees/                        *
      Cross-Appellants,                 *
                                        *   Appeals from the United States
      v.        *                       District Court for the
                *                       Southern District of Iowa.
University of Iowa and                  *
Iowa State Board of Regents,            *
                                        *
      Appellants/                       *
      Cross-Appellees.                  *

Submitted:  May 16, 1996

Filed:  July 19, 1996

Before McMILLIAN, FAGG, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Pauline Brine, Elizabeth Pelton, and Nancy Thompson were tenured associate professors in the dental hygiene program at the University of Iowa.  In 1991, the dental hygiene program, leading to a baccalaureate degree after four years of study, was a separate department within the College of Dentistry, and Professor Brine was the chair of the department. All of the faculty and students in the dental hygiene program were women.

Early in 1991, according to the plaintiffs, the university president and the dean of the College of Dentistry decided to eliminate the dental hygiene program from the university's

offerings, but they did not tell the faculty at that time. The dean made a public recommendation to that effect to the university in September, 1991. The plaintiffs objected to that recommendation. We assume, without deciding, that the plaintiffs framed at least some of those objections in terms of sex discrimination. After various committees, both inside and outside the university, reviewed the recommendation, the Board of Regents voted in April, 1992, to close the dental hygiene program. Three of the four tenured faculty members then filed sex discrimination charges with the relevant federal and state agencies. A month later, the dean announced the phase-out plan for the dental hygiene program. The four tenured faculty members from that program then moved into another department within the College of Dentistry. Students already enrolled in the program were permitted to continue until they graduated; no new students were enrolled after April, 1992.

Three of the four tenured faculty members subsequently sued the university and its Board of Regents (which we treat collectively as "the university"), alleging sex discrimination. The causes of action were based on the first and fourteenth amendments (through 42 U.S.C. § 1983), Title VII (of the Civil Rights Act of 1964), Title IX (of the Education Amendments of 1972), the Iowa constitution, and the Iowa civil rights statutes. The plaintiffs also alleged retaliation by the university (for their allegations of sex discrimination in the recommendation and decision to close the dental hygiene program), actionable under Title VII, Title IX, and the Iowa civil rights statutes.

At a 12-day mixed bench/jury trial in 1995 before a magistrate (by consent of the parties), the trial court found for the university on all Title VII and Title IX claims that arose before November, 1991 (when the right to a jury trial on disparate treatment claims became effective), and on the disparate impact

claim based on Title VII, Title IX, and state law. The jury found for the university on the disparate treatment claim based on Title VII, Title IX, and state law. The trial court granted judgment as a matter of law to the university on the fourteenth amendment and equivalent Iowa constitutional claims (due process, equal protection). The jury found for the plaintiffs on the first amendment and equivalent Iowa constitutional claims and on one retaliation claim (lower salary increases), but the trial court granted judgment as a matter of law to the university on each of those verdicts.

The jury found for the plaintiffs on the remaining retaliation claims and awarded damages of $65,000 to each plaintiff; the trial court awarded attorneys' fees and costs of approximately $227,800 to the plaintiffs. The university appeals, arguing that, as a matter of law, it took no "adverse employment action" that could be considered retaliation for allegations of sex discrimination. We agree. We thus reverse the judgment of the trial court on the retaliation claims and direct the trial court to enter judgment for the university on those claims.

The plaintiffs cross-appeal the trial court's verdict for the university on the disparate impact claim, the denial of judgment as a matter of law on the disparate treatment claim, and the grant of judgment as a matter of law on the due process, first amendment, and salary-related retaliation claims. The plaintiffs also cross-appeal the trial court's refusal to admit into evidence a complete copy, rather than just a summary, of an opinion on an earlier sex discrimination case against the university; the trial court's refusal to instruct the jury separately on Title VII and Title IX; and the trial court's refusal to submit to the jury, as a state-law claim, the disparate impact issue. We affirm the judgments of the trial court with respect to all of those issues,

and, accordingly, we vacate the trial court's award of attorneys' fees and costs to the plaintiffs.

                                    I.

To prevail on a retaliation claim, the plaintiffs must prove that they engaged in protected activity and that they suffered an adverse employment action as a result of that activity.  See, e.g., Evans v. Kansas City, Missouri, School District, 65 F.3d 98, 100 (8th Cir. 1995), cert. denied, 116 S. Ct. 1319 (1996).  The plaintiffs characterize the following actions as retaliation for their complaints that sex discrimination played a part in the recommendation and decision to close the dental hygiene program -- (1) exclusion from the various committees that reviewed the recommendation to close the program and exclusion from participation in planning for the phase-out of the program; (2) the abolition of the department as an administrative unit as of mid-1992 rather than as of mid-1995, when the last dental hygiene students graduated; and (3) the change in Professor Brine's title from "chair" of the "department" to "coordinator" of the "program," along with a loss of secretarial help, a requirement that she have her department chair's permission to order supplies, and a requirement that, as coordinator of the program, Professor Brine communicate "program concerns" to a committee rather than directly to the dean.

With respect to the plaintiffs' alleged exclusion from the various review committees and the process of planning for the phase-out of the program, the plaintiffs have directed us to nothing that establishes their right to be so included.  They point to no law, custom, or practice that gives them such a right.  We note, moreover, that each plaintiff testified before at least one of the review committees.  Finally, we see no evidence other than timing tending to establish that the challenged exclusions of the plaintiffs were because of their allegations of sex discrimination.

-4-

Timing alone is not enough in the circumstances of this case.  See, e.g., Nelson v. J. C. Penney Company, Inc., 75 F.3d 343, 346-47 (8th Cir. 1996), petition for cert. filed (U.S. May 20, 1996).  Without a causal connection between the plaintiffs' allegations of sex discrimination and the alleged exclusions, the plaintiffs lose, as a matter of law.  See, e.g., Evans, 65 F.3d at 100.

With respect to the university's decision to abolish the dental hygiene department as an administrative unit, rather than retaining it until mid-1995, when the remaining dental hygiene students graduated, the plaintiffs again have directed us to no law, custom, or practice that requires the department to be retained.  Nor do we see any evidence tending to establish that the university's decision in that regard was motivated by sex discrimination.  Without such evidence, the plaintiffs lose, as a matter of law.  Id.

Finally, with respect to the change in Professor Brine's title and the new administrative procedures instituted, we view all of those events as inevitable consequences -- or side effects, so to speak -- of the decision to close the dental hygiene department.  We see no evidence that would support the theory that those events were caused by sex discrimination by the university.  Without such evidence, the plaintiffs lose, as a matter of law.  Id.

## II.

The plaintiffs alleged a disparate impact claim under Title VII, Title IX, and state law.  The trial court granted judgment to the university on all of those claims.On cross-appeal, the plaintiffs first assert that the seventh amendment gave them a right to a jury trial on the state-law claim.  The seventh amendment guarantees the right to a jury for all "Suits at common law" where more than twenty dollars is at stake.  See U.S. Const. amend. VII.  We need not reach this question, however,

because we hold that the plaintiffs failed to make a submissible case with respect to their state-law disparate impact claim.

The Iowa courts have held that the state civil rights statutes, see Iowa Code Ann. § 216.6.1.a, § 216.9.1, § 216.9.3, are "patterned after Title VII." Smith v. ADM Feed Corp., 456 N.W.2d 378, 382 (Iowa 1990). The Iowa courts also characterize the federal case law on Title VII as "instructive," Annear v. State, 419 N.W.2d 377, 379 (Iowa 1988), with respect to the state civil rights statutes. We therefore consider the federal case law on Title VII in evaluating the plaintiffs' state-law disparate impact claim.

The trial court found that the decision to close the dental hygiene program was "part of a [year-long] process relating to the University's strategic plan." The goal of the strategic plan is "to strengthen undergraduate education, selected professional and graduate programs, and the diversity of the University community." It seems to us that the "challenged practice" in this case, Wards Cove Packing Company, Inc. v. Atonio, 490 U.S. 642, 659 (1989), is actually the use of the strategic plan. We hold, as a matter of law, that no reasonable juror could find that the use of the strategic plan in question does not "serve[], in a significant way, the legitimate ... goals" of the university, id.

The plaintiffs offered no evidence relative to an "alternative ... practice," see 42 U.S.C. § 2000e-2(k)(1)(A)(ii), § 2000e-2(k)(1)(C), that could substitute for the use of the strategic plan. The university was therefore entitled to judgment as a matter of law on the state-law disparate impact claim. See, e.g., MacPherson v. University of Montevallo, 922 F.2d 766, 772 (11th Cir. 1991), and Dwyer v. Smith, 867 F.2d 184, 189 (4th Cir. 1989). That disposition thus moots the issue of whether a jury trial was required on the state-law claim. For the same reasons,

the trial court was correct in granting judgment as a matter of law to the university on the federal disparate impact claim.

## III.

The jury found for the university on the disparate treatment claim. On cross-appeal, the plaintiffs essentially argue that because the university gave different reasons for closing the dental hygiene program at different times (cost, lack of centrality), the plaintiffs proved pretext. We have read the entire trial transcript. The issue was clearly a submissible one, and we therefore refuse to disturb the jury verdict.

## IV.

The trial court held, as a matter of law, that the university and the Board of Regents were immune, under the eleventh amendment, from suit on the due process and first amendment claims (brought through 42 U.S.C. § 1983). The plaintiffs argue on cross-appeal, first, that the trial court's legal analysis was wrong and, second, that the acts complained of were proprietary functions, not governmental ones, and therefore should not be subject to immunity.

Because the plaintiffs asked only for damages and not for injunctive relief on the claims under 42 U.S.C. § 1983, the trial court was correct in its legal analysis. See, e.g., Sherman v. Curators of the University of Missouri, 16 F.3d 860, 863-65, 865 n.6 (8th Cir. 1994); see also Van Pilsum v. Iowa State University, 863 F. Supp. 935, 936-40 (S.D. Iowa 1994). The plaintiffs' proprietary/governmental argument, moreover, goes to the question of sovereign immunity, not eleventh amendment immunity, see, e.g., Sherman, 16 F.3d at 862 n.2, although whether a state has waived its sovereign immunity is one of the criteria to be considered in determining the issue of eleventh amendment immunity, see, e.g., id. at 864, 864 n.5, 865 n.6. In any event, hiring and firing employees (and, by analogy, establishing and closing departments)

are governmental, not proprietary, functions.  <u>See</u>, <u>e.g.</u>, <u>Nichols v. City</u>
<u>of Kirksville</u>, 68 F.3d 245, 247 (8th Cir. 1995).

V.

The jury found for the plaintiffs on the retaliation claim tied to
lower salary increases, but the trial court granted  judgment as a matter
of law to the university on that claim.  The basis for that ruling was the
trial court's determination that because the plaintiffs' comparison of
salary increases was based on noncomparable sources for salary payments
(<u>i.e.</u>, the other faculty members in the College of Dentistry were eligible
for money from the dental clinic operated by the university, grants, and
contracts, but the faculty members from the dental hygiene program were not
so eligible), the plaintiffs failed to offer sufficient evidence of a
disparity in salary increases.

On cross-appeal, the plaintiffs essentially reargue the evidence.
We agree with the trial court that the comparison of salary increases
offered by the plaintiffs was insufficient, as a matter of law.  The
plaintiffs therefore failed to show an adverse employment action by the
university, and, accordingly, there is no error in the trial court's
ruling.

VI.

The plaintiffs argue on cross-appeal that instead of reading only the
summary of the opinion in <u>Jew v. University of Iowa</u>, 749 F. Supp. 946 (S.D.
Iowa 1990), an earlier case in which the university was found liable for
sex discrimination, the trial court should have allowed the jury to see the
whole opinion.  We agree with the court's post-trial assessment that
because the facts and the legal theory in the earlier case were so
different from those in this case, references to the earlier case should
not have been allowed at all.  <u>See</u>, <u>e.g.</u>, <u>Bradford v. Norfolk Southern</u>
<u>Corp.</u>,

54 F.3d 1412, 1418-19 (8th Cir. 1995).  We therefore reject the plaintiffs' argument on that issue.

## VII.

Title VII (of the Civil Rights Act of 1964) proscribes sex discrimination "with respect to ... compensation, terms, conditions, or privileges of employment."  See 42 U.S.C. § 2000e-2(a)(1).  Title IX (of the Education Amendments of 1972) proscribes sex discrimination with respect to "participation in" or "the benefits of ... any education program" receiving federal money.  See 20 U.S.C. § 1681(a).  The federal regulations on Title IX construe its prohibitions as applying to "promotion, ... demotion, transfer," see 34 C.F.R. § 106.51(b)(2), "[j]ob assignments, classifications and structure, including position descriptions," see 34 C.F.R. § 106.51(b)(4), and "[a]ny other term, condition, or privilege of employment," see 34 C.F.R. § 106.51(b)(10).  The university does not challenge the proposition that a private right of action exists under Title IX.  See, e.g., Cannon v. University of Chicago, 441 U.S. 677, 689, 709, 717 (1979).

On cross-appeal, the plaintiffs contend that because the language of the two statutes (especially as amplified in the regulations applicable to Title IX) is slightly different, the elements of proof are slightly different and, thus, that the trial court should have instructed the jury separately as to each of those claims.  Our court has remarked that "to the degree [a plaintiff] relies upon teaching conditions, such as course assignments," a Title IX claim "merely duplicates" a Title VII claim. O'Connor v. Peru State College, 781 F.2d 632, 642 n.8 (8th Cir. 1986). Other circuits have explicitly declared that for employment discrimination cases, "the Title VII standards for proving discriminatory treatment should apply to claims arising under Title IX."  Lipsett v. University of Puerto Rico, 864 F.2d

881, 896 (1st Cir. 1988); see also Preston v. Commonwealth of Virginia ex rel. New River Community College, 31 F.3d 203, 206-07 (4th Cir. 1994), and Mabry v. State Board of Community Colleges and Occupational Education, 813 F.2d 311, 316-17 n.6 (10th Cir. 1987), cert. denied, 484 U.S. 849 (1987). We are persuaded by those opinions and therefore uphold the trial court's action.

## VIII.

For the reasons stated, we reverse the trial court's judgment for the plaintiffs on the retaliation claims and direct the trial court to enter judgment for the university on those claims. We affirm the trial court's judgments on all of the other issues discussed and, accordingly, vacate the trial court's award of attorneys' fees and costs to the plaintiffs.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-