Karl BREILAND, Plaintiff,

v.

**ADVANCE CIRCUITS, INC., a Minnesota Corporation, Defendant.**

Civil No. 4–96–660 (DSD/JMM).

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 16, 1997.

John A. Klassen, Klassen Law Office, Minneapolis, MN, for plaintiff.

Mary L. Knoblauch, John E. Murray, Fruth & Anthony, Minneapolis, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant's motion for summary judgment. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.

## BACKGROUND

Defendant Advance Circuits, Inc. ("Advance Circuits") is a Minnesota corporation and manufacturer of complex circuit boards. Plaintiff Karl Breiland ("Breiland") has been employed with Advance Circuits at Advance Circuits' Roseville facility since August 1992. Breiland continues to be an employee of Advance Circuits. Breiland is a member of the United Steelworks of America, Local No. 9198.

Advance Circuits has policies in the workplace pertaining to violence and offensive behavior. Specifically, the Violence in the Workplace Policy provides that:

It is the company's policy to maintain a work environment free from violence and aggression and intimidation of any sort. Such behavior includes:

*Threats*—in person, or through letters, or on the phone

*Physical Aggression*—throwing things, smashing doors/walls, sabotaging equipment, physical contact with another employee and similar behavior

*Armed Assault*—attacking another with any form of weapon

Any aggression, assault or threats may be reported to the local authorities and/or result in employee discipline.

Victims of violence, or any employee who feels that s/he may become violent should contact their supervisor, their plant manager or any member of the human resource department.

If you feel unable to discuss a problem regarding this policy you may call Behavioral Health Sciences....

Affidavit of Mary L. Knoblauch, Ex. O. The Offensive Behavior Policy provides that:

It is the company's policy to maintain a working environment free from offensive or degrading remarks or conduct. Such behavior includes inappropriate remarks about an employee's gender, physical characteristics, personal activities, race, national origin or religion. Offensive behavior prohibited by this policy also includes sexual harassment and requests to engage in illegal, immoral or unethical conduct.

An employee who feels that he or she is being subjected to offensive behavior should immediately demand that the person engaging in the offensive behavior stop at once. The employee should report such offensive behavior to his or her supervisor ... so that the behavior is stopped and not repeated. Employees who engage in offensive behavior may be subject to discipline or dismissal.

If an employee feels that reporting the offensive behavior to his or her supervisor is not effective or impossible, or if the supervisor is participating in the offensive behavior, the offensive behavior should be reported to the department or plant manager, or to any member of the human resource department....

If an employee feels that he or she cannot discuss a problem regarding offensive behavior with anyone in the company, all employees enrolled in the Blue Cross Blue Shield health plan may call Behavioral Health Sciences....

Affidavit of Mary L. Knoblauch, Ex. P.

In the Fall of 1994, Breiland had a confrontation with a co-worker regarding problems with a machine. Breiland acknowledges that he "blew up" at his co-worker and did not handle the situation as he should have. Breiland also recalls an incident in which he brushed an employee's garbage onto a table in the lunchroom.

In December 1994, Breiland's co-workers reported that plaintiff had been talking about harming himself. Sue Roemer, the Human Resources Supervisor, spoke with Breiland about his suicidal comments. Roemer contacted mental health professionals for Breiland. In January 1995, Breiland underwent a complete psychiatric evaluation and was diagnosed with a major depressive disorder and was determined to be exhibiting symptoms applicable to personality disorders. The psychiatric evaluation chronicled a history of depression dating back to Breiland's childhood. Plaintiff was prescribed medication.

On January 24, 1995, plaintiff had a confrontation with Mark Fleek, Breiland's group leader, in which plaintiff "flipped ... off" Fleek and called Fleek an "asshole." Affidavit of Richard A. Rodgers, Ex. B. Plaintiff also made threats against Fleek. On February 2, 1995, Richard Rodgers, the Director of Human Resources for Advance Circuits since April 1990, met with plaintiff and imposed a three-day suspension for violation of the "Violence in the Workplace" policy. Rodgers stated that the suspension was being given because management and co-workers were afraid to work with plaintiff and that the suspension would provide a cooling off period. The Union filed a grievance on Breiland's behalf, which was settled. Plaintiff took a leave of absence from Advance Circuits to allow time for him to meet with health professionals. Plaintiff has acknowledged that his comments were inappropriate. The actions taken by Advance Circuits as a result of the January 1995 incident, including

the suspension and leave of absence, are not being challenged in this lawsuit.

In February 1995, plaintiff's treating psychologist, Dr. Shepherd Myers, completed an intake assessment of plaintiff and diagnosed plaintiff with major depression, schizoid personality disorder, and severe psychosocial stress from being on leave from work. By letter dated March 21, 1995 to Shelley Ransom, who is the Benefits Manager at Advance Circuits, Dr. Myers detailed the results of his psychological assessment and profile of Breiland:

> [Breiland] is experiencing extensive anxiety and depression. Consistent with his self-report, Mr. Breiland tends to be introversive, and experiences considerable social discomfort. Mr. Breiland may easily misinterpret social cues, and may have difficulty trusting others. His profile is consistent with an individual who needs psychiatric and psychotherapeutic services to maintain an adequate level of functioning at this time.

> Mr. Breiland reportedly made statements which indicated that he has the potential to be violent. His MMPI–2 profile is not consistent with an individual who is prone to violence. Although he displays underlying anger which may result in inappropriate expressions of his feelings, there are strong indications that he will not act out aggressively. There was no evidence of antisocial personality traits. It appears that Mr. Breiland has difficulty coping with interpersonal frustration, may misinterpret people's motives, and has very poor skills in communicating his anger constructively.

> In his interview, Mr. Breiland denied that he has any history of violent behavior. He reported that he would not physically harm any of his co-workers. These statements appeared honest and sincere.

> It is highly recommended that Mr. Breiland continue to participate in psychotherapy, and continue to receive psychiatric services under the care of Dr. Stokes. It will be extremely important for Mr. Breiland to learn how to manage his anger, to understand the impact of his reclusive behavior and inappropriate expressions for

anger on others, and to learn to interact with co-workers in an appropriate manner.

> Please feel free to contact me if you have any questions or concerns.

Affidavit of John A. Klassen, Ex. O at 45–46.

In April 1995, plaintiff returned to work. On April 13, 1995, Breiland had a dispute with Karl Sagedahl, the group leader in the plating department, in which Breiland reacted angrily toward Sagedahl in response to an explanation Sagedahl gave regarding the operation of a new plating line. Sagedahl did not report the incident. On April 14, 1995, Breiland was involved in another dispute with Sagedahl in which Breiland angrily reacted and excessively swore in response to a decision made by Sagedahl. On April 19, 1995, Breiland was suspended for three days pending review to determine if termination of employment was warranted. The reason given for the suspension was Breiland's "incident of uncontrolled anger and for violation of the offensive behavior policy." Affidavit of Mary L. Knoblauch, Ex. D. The Union objected to the suspension. Plaintiff was initially given the options of termination of employment or a leave of absence of two months by mutual agreement between the defendant, the Union, and the plaintiff. In April 1995, Dr. Myers recommended to Advance Circuits that Breiland return to work as soon as possible.

In a letter dated May 1, 1995, Rodgers informed Breiland that his "recent outbursts were a violation of [the] Offensive Behavior and Violence in the Workplace policies[,]" and that his "behavior frightened several . . . co-workers." Affidavit of Mary L. Knoblauch, Ex. K. The letter made a proposal:

> For these reasons, we strongly believe that a short leave of absence is justified. This leave will allow you the time you require to increase your therapy and deal with your anger in more constructive ways. You will be provided short term disability benefits for the duration of this leave of absence.

> Although a two month leave of absence was initially proposed, we will agree to your return to work on Monday, May 15, 1995. Initially, you will return to work on

a first shift, which is Monday through Friday, 7:00 a.m. to 3:10 p.m. We will re-evaluate the possibility of your return to a third shift once you have been back to work for a few weeks. The primary reason for this is to allow you more immediate access to support and guidance from supervisory and management employees.

. . . . .

Karl, it is important for you to realize that the Offensive Behavior and Violence in the Workplace policies must apply to every employee of this Company. Every employee of ACI has the right to work in a safe and unthreatening environment. Your continued employment with Advance Circuits, Inc. will require your complete compliance with these policies.

*Id.* After further communication between the defendant, the Union, and the plaintiff, the parties ultimately reached a mutual agreement whereby Breiland was placed on short-term disability leave of absence from the time of his suspension through Friday, May 12, 1995, and whereby Breiland would return to work on May 15, 1995.

Since plaintiff's return to work on May 15, 1995, plaintiff has continued to perform his job. Breiland alleges instances in which he believes he was inappropriately treated by Advance Circuits even after his return to work in May 1995. In December 1995, Breiland was involved in a dispute with a co-worker. A note was placed in Breiland's personnel file in which Breiland was told that he needed to continue to work on controlling his emotions. In February 1996, plaintiff received an "employee warning notice" regarding his unsafe operation of a forklift.

On August 23, 1995, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting that he was discriminated against because of a mental disability. On July 17, 1996, plaintiff commenced an action in Minnesota state court. Pursuant to 28 U.S.C. § 1446, defendant filed a notice of removal and removed the action to this court. Under counts I and III, plaintiff alleges discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.,* and the Minnesota Human Rights Act ("MHRA"), Minnesota Statutes, §§ 363.01–363.14. Under counts II and IV, plaintiff asserts claims of retaliation in violation of the ADA and the MHRA. Plaintiff also asserts additional state law claims of intentional and negligent infliction of emotional distress, and respondeat superior. Defendant moves for summary judgment on all claims. Plaintiff does not oppose summary judgment on counts V, VI, and VII. Thus, the court considers defendant's motion with respect to the remaining claims.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248, 106 S.Ct. at 2510. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. at 2512. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510–11.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue that facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a

genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511–12. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court addresses defendant's motion.

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ... the hiring, advancement or discharge of employees, ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2). The ADA defines "discriminate" to include "not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A) A qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Under the terms of the ADA, a "reasonable accommodation" is an accommodation that does not impose an undue hardship, such that the employer would be forced to incur significant difficulty or expense. 42 U.S.C. § 12112(b)(5)(A); 42 U.S.C. § 12111(10)(A).

Defendant Advance Circuits asserts that summary judgment is appropriate on the discrimination counts in this case because plaintiff is not disabled within the meaning of the ADA or the MHRA, and, to the extent that an obligation to reasonably accommodate exists in this case, Advance Circuits satisfied its obligation. Plaintiff argues that he is disabled within the meaning of the ADA because he has a mental impairment that substantially limits him in his major life activities. In addition, plaintiff asserts he is disabled within the meaning of the ADA because his employer regarded him as having such an impairment.

█ A mental impairment includes "any mental or psychological disorder, such as ... emotional or mental illness...." 29 C.F.R. § 1630.2(h)(2). Advance Circuits does not dispute that plaintiff has a mental impairment. Advance Circuits argues, however, that Breiland is not substantially impaired in a major life activity. The regulations promulgated by the Equal Employment Opportunity Commission under the ADA list functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" as major life activities. *See* 29 C.F.R. § 1630.2(i). Plaintiff asserts that the major life activity which is impaired in his case is the normal social interaction with others, or the ability to get along with others. In *Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 15 (1st Cir.1997), the First Circuit Court of Appeals addressed whether "the ability to get along with others" is a major life activity within the meaning of the ADA:

> The concept of "ability to get along with others" is remarkably elastic, perhaps so much so as to make it unworkable as a definition. While such an ability is a skill to be prized, it is different in kind from breathing or walking, two exemplars which are used in the regulations. Further, whether a person has such an ability may be a matter of subjective judgment; and the ability may or may not exist depending on context.

*Soileau,* 105 F.3d at 15. This court agrees that Breiland's inability to get along with others is not the sort of activity within the ADA's purview of a major life activity. Although the EEOC Compliance Manual does list interacting with others as a major life activity, the manual is not binding. *See* EEOC Compliance Manual § 902.3, 8 FEP Manual (BNA) 405:7261 (stating that mental and emotional process such as thinking, con-

centrating, and interacting with others are other examples of major life activities); *see also Zirpel v. Toshiba America Information Systems, Inc.,* 111 F.3d 80, 81 (8th Cir.1997) (determining that plaintiff failed to create a triable dispute about whether her disorder substantially limited any of her major life activities); *Soileau,* 105 F.3d at 15 n. 2 (recognizing the EEOC Compliance Manual does not have the force of law and is not binding on the court)

■ In addition, plaintiff has failed to provide sufficient evidence that he is substantially limited in his ability to interact with others. To show substantial limitation, the plaintiff must show he is "[u]nable to perform a major life activity that the average person in the general population can perform," or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). In this case, plaintiff has not established the degree of limitation required by the ADA. The court concludes that plaintiff has failed to establish that he is substantially limited in a major life activity within the meaning of the ADA or MHRA.

■ Plaintiff also asserts that Advance Circuits regarded him as having a disability within the meaning of the ADA. *See* 42 U.S.C. § 12102(2). A person is "regarded as having" an impairment that substantially limits major life activities "when others treat that person as having a substantially limiting impairment." *Webb v. Mercy Hosp.,* 102 F.3d 958 (8th Cir.1996); *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995). The plaintiff has failed to show that Advance Circuits regarded him as having an impairment which substantially limited a major life activity. Thus, summary judgment is appropriate on plaintiff's ADA discrimination claim.

Because claims under the Minnesota Human Rights Act are interpreted consistently with claims under the ADA, the court similarly grants summary judgment in favor of defendant on plaintiff's MHRA discrimination claim. *See Helgerson v. Bridon Cordage, Inc.,* 518 N.W.2d 869 (Minn.Ct.App. 1994); *Lindgren v. Harmon Glass Co.,* 489 N.W.2d 804, 808 (Minn.Ct.App.1992).

To the extent that plaintiff asserts that defendant failed to reasonably accommodate plaintiff, there is no evidence that defendant failed to satisfy its statutory obligations, even if plaintiff were able to show that he is disabled within the meaning of the ADA. *See* 42 U.S.C. § 12112(b)(5)(A); Minn.Stat. § 363.03, subd. 1(6). With respect to plaintiff's need for reasonable accommodation, plaintiff asserts that defendant acted in bad faith. The regulations provide that in order to determine the appropriate accommodation, "it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). In making his bad faith allegation, plaintiff relies on *Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281 (7th Cir.1996). In *Bultemeyer,* the court recognized that an employee's request for reasonable accommodation requires a great deal of communication between the employee and employer. *Id.* at 1285. The court reiterated its explanation of the interactive process:

No hard and fast rule will suffice, because neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, the court should attempt to isolate the cause of the breakdown and then assign responsibility.

*Id.* (quoting *Beck v. University of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir. 1996)). This case is distinguishable from

*Bultemeyer.* In *Bultemeyer,* there was evidence that the employer refused to accommodate a disabled employee and failed to engage in any interactive process. In this case, there is evidence that Advance Circuits communicated with plaintiff and his doctor and did not foreclose interaction or accommodation.

■ Reasonable accommodation may include "[j]ob restructuring; part-time or modified work schedules; ... and other similar accommodations for individuals with disabilities." 29 C.F.R. § 1630.2(*o*)(3). A leave of absence can also be a reasonable accommodation. *See* 29 C.F.R. pt. 1630, app. at 344; *see also Hankins v. The Gap, Inc.,* 84 F.3d 797, 801 (6th Cir.1996) (recognizing that reasonable accommodations include leave time). In this case, Breiland violated defendant's policy and was placed on a leave of absence. Defendant's representatives communicated with Breiland's treating psychologist and determined that it would be appropriate for plaintiff to return to work. Defendant's decision involved the doctor's recommendation and consideration of the safety of other employees. There is no evidence that plaintiff sought accommodation and was refused. On this record, there is insufficient evidence from which a reasonable jury could find that Advance Circuits acted in bad faith or failed to reasonably accommodate plaintiff.

■ In any event, plaintiff violated defendant's workplace policies. Neither the ADA nor the MHRA obligates Advance Circuits to ignore plaintiff's misconduct. *See Harris v. Polk County, Iowa,* 103 F.3d 696, 697 (8th Cir.1996) (agreeing with other court of appeals that an employer may hold disabled employees to the same standards of conduct as all other employees); *Den Hartog v. Wasatch Academy,* 909 F.Supp. 1393, 1401 (D.Utah 1995) (recognizing that "Congress, in enacting the ADA, intended to prohibit unfair stereotypes about the disabled but not to shield the disabled from the consequences of misconduct"); *Palmer v. Circuit Court of Cook County, Soc. Serv.,* 905 F.Supp. 499, 509 (N.D.Ill.1995) (discerning that courts have consistently held that one who displays abusive and threatening conduct toward co-workers is not an otherwise qualified individual), *aff'd,* 117 F.3d 351 (7th Cir.1997); *Carrozza v. Howard County, Md.,* 847 F.Supp. 365, 367 (D.Md.1994) (recognizing that disciplinary proceedings are not prohibited even if misconduct is caused by a disability), *aff'd,* 45 F.3d 425 (4th Cir.1995). In this instance, there is evidence that plaintiff violated defendant's policies and that he was disciplined in accordance with his conduct.

■ Plaintiff also asserts claims of retaliation. To establish a prima facie case of retaliation, plaintiff must show that he engaged in statutorily protected activity, that the defendant took adverse action against him, and that there is a connection between the two. *Montandon v. Farmland Industries, Inc.,* 116 F.3d 355, 359 (8th Cir.1997). The defendant may then rebut the prima facie case by advancing a legitimate nonretaliatory reason for the adverse employment action. *Id.* If the defendant makes its showing, the plaintiff must show that the defendant's proffered reason was a pretext for illegal retaliation. *Id.* The Eighth Circuit Court of Appeals has recognized that "[a]lthough 'actions short of termination may constitute adverse actions within the meaning of the statute,' *Smith v. St. Louis University,* 109 F.3d 1261, 1266 (8th Cir.1997), 'not everything that makes an employee unhappy is an actionable adverse action.'" *Montandon,* 116 F.3d at 359 (quoting *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996)). Rather, "the action must have had some adverse impact on [Breiland] to constitute an adverse employment action." *See Montandon,* 116 F.3d at 359; *see also Williams v. Bristol–Myers Squibb, Co.,* 85 F.3d 270, 274 (7th Cir.1996) (recognizing that a materially adverse employment action is required "[o]therwise every trivial personnel action that an irritable, chip-on-the shoulder employee did not like would form the basis of a discrimination, suit").

■ Defendant asserts that summary judgment is appropriate on plaintiff's retaliation counts because Advance Circuits did not take any adverse employment action against plaintiff that could support a claim for retaliation. The court agrees. Breiland was not demoted in any way. Advance Circuits' actions did not involve changing Breiland's po-

sition, title, salary, or any other aspect of his employment. The court concludes that the conduct of which Breiland complains does not rise to the level of an adverse employment action. Thus, summary judgment is appropriate on Breiland's retaliation claims.

### CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment is granted. Plaintiff's complaint is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**