**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

No. 97-2433

Paul J. Kiel,                         *
                                      *
          Appellant,        *
                                      * Appeal   from   the   United
States
          v.                          * District Court for the
                                      * Eastern    District    of
Missouri.
Select Artificials, Inc.,   *
                                      *
          Appellee.         *

Submitted: January 14, 1998

                                                          Filed:
April 20, 1998

Before WOLLMAN, BRIGHT, and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

     Paul Kiel appeals the district court's grant of
summary judgment for Select Artificials, Inc. (Select).
Kiel sued Select under the Americans with Disabilities
Act (ADA), 42 U.S.C. § 12101-12213 (1995) and the
Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §
213.010-213.137 (1996). Under the ADA and MHRA, Kiel
argued that he was terminated because he requested a
reasonable accommodation and then protested when his
request was denied. He also alleged other unlawful

employment practices.  We reverse and remand to the district court for trial on Kiel's retaliation claim.

Because this case concerns a grant of summary judgment, we recite the facts in a light most favorable to Kiel, the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citation omitted). Kiel has been deaf since birth. He worked as a billing clerk for Select from January 1992 until February 1994, when he was terminated. Although most billing clerks were required to make telephone calls to customers, Kiel's supervisor made the calls because of Kiel's hearing impairment.

Kiel asked Select to accommodate his hearing impairment on many occasions. Specifically, Kiel requested that Select provide a telecommunication device for the deaf (TDD) that allows deaf persons to make and receive telephone calls. Although Select's policy allowed its employees to make and receive both business as well as personal calls, Kiel could do neither without a TDD and an access line. According to Kiel, his request for a TDD was denied on several occasions. Kiel also requested that an interpreter be provided for meetings and other company affairs so he could fully participate. With the exception of one training session, the company denied Kiel's requests. The company stated that aside from the training session, Kiel did not provide sufficient notice for Select to obtain an interpreter for meetings.

On February 17, 1994, Kiel drafted a letter to Robert Fry, Select's owner, requesting that Select provide TDDs so that Kiel and two other deaf employees could enjoy the

same privileges as non-deaf employees to make and receive phone calls.  According to his letter, each TDD cost $230, which Select could deduct from its taxes.  Kiel first planned on distributing the letter to other hearing-impaired employees.  When Julie Fry, Select's president, saw Kiel making copies of the letter, she admonished him for using the photocopying machine for personal reasons.  Kiel explained that it was not a personal letter but was being sent to Mr. Fry and that under the ADA, the company was required to purchase the TDD.  In addition, he pointed out the nominal

cost of the device and expressed his view that Select could claim a tax deduction after purchasing the device.

After Ms. Fry confronted Kiel at the copy machine, Kiel asked her whether Select would purchase the TDD, to which Ms. Fry continuously stated no. Kiel requested an American sign language interpreter so he could discuss the issue with Mr. Fry. Ms. Fry denied his request. Kiel became frustrated, raised his voice at Ms. Fry and said "you're selfish, you're selfish." Four of Select's other employees overheard the conversation.

Later in the day, Ms. Fry handed Kiel a note asking him if he realized that he had shouted at her. He stated that he did not realize that he had shouted and immediately apologized. Believing the incident to be behind them, Kiel went back to work. In his deposition, Kiel explained the series of events:

> Q.  Did you tell [Ms. Fry] she was selfish?
>
> A.  Yes.
>
> Q.  Did you say that twice?
>
> A.  Yes.  I was trying to impress on her what I was trying to say.  I've been taught to repeat.  If people don't understand me, I've been taught to repeat myself.
>
> Q.  Do you know whether your voice was raised at the time that you called [her] selfish?
>
> A.  No. . . .  I didn't know that people could hear me.

(Joint App. at 39.)  Later in the day, however, Ms. Fry sent Kiel a termination letter.  It read: "Since you shouted at me this morning during our conversation, it was very belittling and insulting in front of all the office employees.  You were insubordinate in

this action and I cannot tolerate this type of action. I have no choice but to discharge you for insubordination." (Appellant's App. at 64.) Kiel requested an interpreter to further discuss the matter, but Ms. Fry refused. Sometime thereafter, Kiel was replaced by an employee who was not disabled. A Federal magistrate granted Select's summary judgment motion on all claims. Kiel appeals.[1]

## II.

We review a district court's grant of summary judgment de novo. United States ex. rel. Glass v. Medtronic, Inc., 957 F.2d 605, 607 (8th Cir. 1992). In considering whether to grant summary judgment, a court examines all the "pleadings, depositions, answers to interrogatories . . . admissions on file . . . [and] affidavits." Fed. R. Civ. P. 56(c). After viewing the record in a light most favorable to the non-moving party, summary judgment is appropriate only where there is "no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." Langley v. Allstate Ins. Co., 995 F.2d 841, 844 (8th Cir. 1993) (citations omitted).

Under the ADA's anti-retaliation provision: "No person shall discriminate against any individual because such individual has opposed any act or practice made

---

[1]We note from the outset that the causes of action under the ADA and Missouri law are treated the same. See Finley v. Empiregas, Inc., 975 F.2d 467, 473 (8th Cir. 1992) ("decisions under the various federal employment discrimination statutes are applicable and authoritative under the [Missouri Human Rights Act] as well as federal law") (quotation and citations omitted)).

unlawful by this chapter. . . ." 42 U.S.C. § 12203(a). "To establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in [a] statutorily protected activity; (2) an adverse employment action; and (3) a causal connection between the adverse employment action and the protected activity." Evans v. Kansas City, Mo. Sch. Dist., 65 F.3d 98, 100 (8th Cir. 1995) (citations omitted). To show that he engaged in a statutorily protected activity, Kiel must demonstrate that he had a good

faith, reasonable belief that his employer was engaging in a discriminatory employment practice.  Id. (citation omitted).

We conclude that a jury could reasonably find that Kiel had a good faith, reasonable belief that his activity was statutorily protected.  The record supports a finding that Kiel reasonably believed that the ADA required Select to provide a TDD as a reasonable accommodation for his disability.  Second, because he was fired, Kiel suffered an adverse employment action.  Finally, Kiel has offered sufficient evidence to support a finding of a causal connection between his protected activity and termination.  A plaintiff may establish this part of his/her prima facie case, in part, through circumstantial evidence, e.g., "proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive."  Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir. 1992) (citations omitted).

The evidence shows that Kiel was fired the same day he and Ms. Fry debated whether Select would purchase the device for deaf employees.  While proximity in time alone may not satisfy the causation requirement, we are persuaded that a reasonable jury could conclude that Kiel was terminated as a result of his numerous requests for accommodations.  Therefore, Kiel has sufficiently established a prima facie case.

Once the plaintiff has established a prima facie case of retaliation, the burden of production shifts to the employer to show that its decision to terminate the

9

employee was based on a legitimate, nondiscriminatory reason. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506-07 (1993) (citation omitted). If the employer proffers a legitimate, nondiscriminatory reason, the burden then shifts back to the employee to show that the employer's proffered reason is a pretext for discrimination. <u>Id.</u> at 507 (citation omitted). The burden of persuasion remains with the plaintiff at all times. <u>Id.</u> (citation omitted).

Select argues that even if Kiel reasonably believed that Select was violating the ADA, his conduct, which included shouting at Ms. Fry, was not protected. Even if Kiel's conduct in protesting Ms. Fry's denial of an accommodation was generally consistent with opposing unlawful discrimination under the ADA, "we must also consider whether that conduct was so disruptive, excessive, or 'generally inimical to [the] employer's interests . . . as to be beyond the protection'" of the ADA. Kempcke v. Monsato Co., No. 97-1423, slip op. at 5 (8th Cir. 1998) (quoting Hochstadt v. Worcester Found. for Experimental Biology, 545 F.2d 222, 230 (1st Cir. 1976)). Although an employer is ordinarily able to proffer insubordination as a legitimate reason for termination, Berg v. Bruce, 112 F.3d 322, 327 (8th Cir. 1997), the evidence presented by both parties shows that a fact question remains as to the cause of Kiel's termination.

Ms. Fry's note to Kiel asking whether he was aware that he had raised his voice tends to show that she was not certain that Kiel intended to be insubordinate. Kiel responded to her note by explaining that he did not realize that he had shouted and he apologized prior to his termination. It is our view that Kiel's singular act, whether purposeful or otherwise, is not the type of conduct that falls outside the ADA's

11

protection.[2]  Because a jury could reasonably find that Select fired Kiel because of his protected behavior, summary judgment on Kiel's retaliation claim is improper.

We believe that Kiel's remaining claims are so closely related to his retaliation claim, we need not address them individually.

## III.

For the reasons discussed above, we reverse and remand to the district court for trial on Kiel's retaliation claim.

WOLLMAN, Circuit Judge, dissenting.

With all due respect to the court's opinion, I do not believe that the record, fairly read, admits of a

---

[2]Select argues that simply because Kiel is disabled does not mean that they are unable to fire him.  While we agree with this general proposition, the cases that Select cites in support of its argument are inapposite.  In those cases, the employee's conduct fell outside the ADA's protection because it excessively disrupted the workplace and/or constituted egregious or criminal behavior.  See, e.g., Palmer v. Circuit Court of Cook County, Ill., 117 F.3d 351, 352 (7th Cir. 1997) (under the ADA, termination for excessively disruptive behavior and threats is justified since "[t]he Act does not require an employer to retain a potentially violent employee"); Newland v. Dalton, 81 F.3d 904, 906 (9th Cir. 1996) (employee terminated not because of his disability, "but rather . . . in response to his attempt to fire an assault rifle inside a bar"); Williams v. Widnall, 79 F.3d 1003, 1007 (10th Cir. 1996) (employee terminated not because of disability, but because he "made threats against his supervisor and co-workers"); Maddox v. University of Tennessee, 62 F.3d 843, 848 (6th Cir. 1995) (under the ADA, termination for criminal behavior warranted because "[e]mployers . . . must be permitted to take appropriate action with respect to an employee on account of **egregious or criminal conduct**, regardless of whether the employee is disabled") (emphasis added).

conclusion that it is open to a jury to find that Ms. Fry fired Kiel in retaliation for his engaging in protected activity.  Accordingly, I respectfully dissent.

The record reveals, as established by the deposition testimony of Kiel's co-workers, that Kiel yelled out at Ms. Fry, "You're selfish, Julie, you're selfish," and then slammed a desk drawer.  At least two of these co-workers testified that they had never before heard Kiel speak that loudly.  As one of the co-workers testified, "It started off, he was kind of yelling louder than I had ever heard him speak before, and then she [Ms. Fry] was trying to calm him down, I felt."

As for the contention that Kiel may not have realized that he was shouting, he himself testified that "If I want to shout, I shout," which is consistent with the co-workers' testimony that they had never before heard him raise his voice.

Perhaps we might have been more tolerant of Kiel's insubordinate outburst than was Ms. Fry, but to hold that the ADA insulates an employee from the consequences of insubordination is to engage in a tortured reading of the purpose of that statute.  To hold in the face of this record that it would be reasonable for a jury to find that Ms. Fry fired Kiel in retaliation for his requesting a TDD is to penalize employers like the Frys, who have an admirable record of hiring deaf employees, and to send an ominous message to other employers who might heretofore have been contemplating adopting a similar hiring practice.  Virtue may well be its own reward, but we ill serve enlightened employment practices by fettering them with bonds the statute was never contemplated to impose.

A true copy.

    Attest:

14

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.