Michael **BARNES** and Sandra Vieau, Plaintiffs,

v.

**THE BENHAM GROUP, INC., Defendant.**

**Civil No. 97–1841 (DSD/JMM).**

United States District Court, D. Minnesota.

Oct. 13, 1998.

James Christopher Wicka, Susan M. Coler, Messerli & Kramer, Minneapolis, MN, for Michael Barnes and Sandra Vieau, plaintiffs.

David P. Jendrzejek, Moss & Barnett, Minneapolis, MN, William E. Corum, Shelly L. Freeman, Blackwell Sanders Matheny Weary & Lombardi, Kansas City, MO, Glenn E. Ricks, Benham Companies, Oklahoma City, OK, for Benham Group Inc, defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of plaintiff Michael Barnes to strike the affidavit of Kathleen Jackson and the motion of defendant The Benham Group, Inc., for summary judgment and for sanctions. Based on a review of the file, record, and proceedings herein, the court denies plaintiff's motion to strike, grants defendant's motion for summary judgment, and denies defendant's motion for sanctions.

## BACKGROUND

Plaintiff Michael Barnes is a Minnesota resident with a Ph.D. in mechanical engineering. Defendant The Benham Group, Inc., is an architectural and engineering design firm headquartered in Oklahoma City, Oklahoma that provides project management and engineering services. Defendant maintains an office in St. Paul, Minnesota, where plaintiff

began working as a mechanical engineer on July 31, 1996.

When defendant opened its St. Paul office in February 1996, group health benefits were made available to all of defendant's St. Paul employees through an insurance plan offered by Prudential Insurance Company. Although Prudential had stopped servicing Minnesota employers at the time defendant opened its St. Paul office, that company agreed to provide defendant's St. Paul employees with "out of area" insurance benefits. However, because the "out of area" benefits made available to defendant's St. Paul employees were not competitive with group health benefits offered by other employers in the St. Paul area, defendant decided to explore other options for group health insurance providers.

In order to secure a new group health insurance plan, in the Fall of 1996 a local insurance broker provided defendant with insurance application/enrollment forms from three bidding group health insurance providers: Blue Cross/Blue Shield, Medica, and HealthPartners. All 34 potentially covered employees in defendant's St. Paul office were asked to complete application enrollment forms provided by these insurance companies to allow for an assessment of the risks accompanying defendant's employees and calculation of the appropriate premium. Employees electing not to complete these forms were ineligible to participate in the group insurance plan and were asked to sign a waiver indicating that they had been offered an opportunity to apply for coverage and had declined.

Employees were asked to place their completed forms in a common collection envelope. Once collected, these forms were submitted to the insurance broker. Shortly thereafter, the three bidding providers began contacting defendant's employees to obtain missing or incomplete information provided on the application/enrollment forms. Plaintiff was one of the individuals from whom the insurance providers sought additional information. After being asked by defendant on several occasions to provide the information necessary to complete the bidding process,

plaintiff provided a sealed envelope presumably containing the requested information. Plaintiff also suggested that the insurers review his medical records to obtain the necessary information, and he gave his authorization for disclosure.

HealthPartners was ultimately selected to provide group health benefits to employees of defendant's St. Paul office. The sealed envelope plaintiff had submitted contained general answers to several of HealthPartners' questions. Because these answers were devoid of the details, dates, and effects of several medical conditions, implied that other conditions not listed may exist, and were otherwise nonresponsive, the insurance broker again called defendant and sought assistance in obtaining the information necessary to evaluate the risk associated with insuring defendant's employees. At a meeting with his supervisors, plaintiff was told he could either call the insurer from a telephone in the next room and provide the requested information or sign a waiver indicating that he had been offered an opportunity to apply for coverage but had declined. Plaintiff refused to either provide the requested information or sign the waiver. Because of plaintiff's refusal, defendant terminated his employment on January 28, 1997, citing "insubordination" as the reason for the termination.

Plaintiff and Sandra Vieau, another employee of defendant,[1] subsequently filed suit on July 21, 1997, in Ramsey County District Court, alleging numerous violations of the Americans with Disabilities Act (ADA), Minnesota Human Rights Act (MHRA), and common law. Defendant removed this matter to Federal District Court, and now brings this motion for summary judgment and for sanctions. Although the original complaint contained eleven counts, only three remain before the court: (1) Count II, alleging retaliation in violation of the ADA and MHRA; (2) Count III, alleging unlawful interference, coercion, and intimidation in violation of the ADA; and (3) the portion of Count IV alleging medical inquiry discrimination in viola-

---

1. The claims of plaintiff Sandra Vieau have been settled and are no longer before the court.

tion of the ADA.[2] Plaintiff brings a separate motion to strike the affidavit of Kathleen Jackson. After oral argument, these matters are properly before the court for decision.

## DISCUSSION

### a. Plaintiff's Motion to Strike the Affidavit of Kathleen Jackson

Plaintiff moves to strike the affidavit of Kathleen Jackson, submitted by defendant in conjunction with its summary judgment reply memorandum. Ms. Jackson's four paragraph affidavit states, in essence, that HealthPartners was asked to provide a bid for group health insurance for the employees of defendant's St. Paul Office, and in order to properly assess the risks associated with that group of potential insured, HealthPartners provided defendant with application/enrollment forms to be completed by each employee desiring to participate in the group coverage. Plaintiff objects that defendant did not disclose Ms. Jackson as a person with knowledge or as a witness in this matter, and contends that pursuant to Fed.R.Civ.P. 16 and 26 Ms. Jackson's affidavit should not be considered by the court.

As indicated by the court at the hearing on this matter, plaintiff's motion will be denied. Plaintiff asserted in his response to defendant's motion for summary judgment that defendant's claim that the inquiries at issue here were made in connection with the underwriting of health insurance lacked evidentiary support. Defendant submitted Ms. Jackson's affidavit to rebut this assertion. Rules 16 and 26(a)(1)(A), cited by plaintiff as the basis for his motion to strike, are inapplicable in this situation and do not support plaintiff's motion. Defendant did not intend to call Ms. Jackson as a trial witness, and her affidavit was provided only after plaintiff contested, for the first time in his memorandum in opposition to defendant's motion for summary judgment, that the inquiries made of him were not for the purpose of underwriting

group health insurance benefits. For these reasons, plaintiff's motion is without merit.

### b. Defendant's Motion for Summary Judgment

Also before the court is the motion of defendant for summary judgment on the remaining counts of the Second Amended Complaint. The standard to be utilized by the court in deciding a summary judgment motion is well-settled. The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248, 106 S.Ct. 2505. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. 2505. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. 2505.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. 2505. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477

---

**2.** Counts I and V of the initial complaint were dismissed by the court on February 17, 1998. Count XI was omitted from the amended complaint filed by plaintiff. Counts VII, VIII, IX, and X of the initial complaint related only to

plaintiff Vieau. Finally, plaintiff has voluntarily chosen not to pursue Count VI and any claim for medical inquiry discrimination under the MHRA as alleged in Count IV.

U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

## 1. Medical Inquiry Discrimination in Violation of the ADA (Count IV)

As part of its group underwriting enrollment process, HealthPartners provided a form to be completed by each of defendant's St. Paul employees. After soliciting biographical and pertinent insurance information from the employees, the form asks a number of questions that are the genesis of this lawsuit. First, the form asks:

> Have you or any member of your family been hospitalized or had medical expenses of $3,000 or more in the past 5 years?

HealthPartners Group Underwriting Enrollment Form, Exhibit B to Def.'s Mem. in Support of its Mot. for Summ. J. (Docket No. 58). If the answer is "yes," the form asks the employee to give "names, details, dates and remaining effects." *Id.* Next, the form asks:

> In the past 5 years, have you or any member of your family been under the care of a physician for a medical condition (ie. diabetes, heart condition, cancer, chemical dependency, mental health, pregnancy, or other)?

*Id.* Again, if the answer is "yes" the employee is asked to give "names, details, dates, and remaining effects." *Id.* The form also asks whether the employee or any member of his or her family has taken any medications or used tobacco products within the past 5 years. *Id.* Plaintiff refused to completely answer these questions, and was terminated for "insubordination." He now alleges that he was terminated for refusing to respond to illegal medical inquiries in violation of the ADA, specifically 42 U.S.C. § 12112(d)(4), which provides that:

> (A) Prohibited examinations and inquiries

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

> (B) Acceptable examinations and inquiries

> A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.

Plaintiff contends that the plain language of the statute allows medical inquiries only when "job related and consistent with business necessity" and only when related to an employee's ability "to perform job-related functions." Thus, he argues, the inquiries made of him in conjunction with the acquisition of new group health insurance were illegal because they had nothing to do with plaintiff's ability to do his job.

The provisions cited by plaintiff are contained in Subchapter I of the ADA. In Subchapter IV, the Act specifically provides that:

> Subchapters I through III of this chapter and title IV of this Act shall not be construed to prohibit or restrict—

> (1) an insurer, hospital or medical service company, health maintenance organization, or any agent, or entity that administers benefit plans, or similar organizations from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with state law;

> (2) a person or organization covered by this chapter from establishing, sponsoring, observing, or administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law;

> (3) a person or organization covered by this chapter from establishing, sponsoring, observing, or administering the terms of a bona fide benefit plan that is not subject to State laws that regulate insurance.

Paragraphs (1), (2), and (3) shall not be used as a subterfuge to evade the purposes of subchapter I and III of this chapter. 42 U.S.C. § 12201(c)(1)–(3). This provision is referred to as the "safe harbor provision." *See, e.g., Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.,* 37 F.3d 12, 20 (1st Cir.1994) ("[T]he ADA carves out a safe harbor of sorts for anyone who is 'an insurer, hospital, or medical service company, health maintenance organization, or any agent, or entity that administers health plans, or similar organizations.' "). Thus, defendant contends that the health status and claims history inquiries at issue are specifically allowed by the ADA.

After reviewing the relevant statutory provisions, the court agrees that the questions asked of plaintiff are allowed by the ADA. The questions on the HealthPartners application were asked solely for the purpose of underwriting, classifying, and administering risks in conjunction with defendant's search for a new group health plan. Further, defendant sought to establish, sponsor, observe, or administer the terms of a bona fide benefit plan based on underwriting, classifying, or administering risks. The purpose of the safe harbor provision is to permit the development and administration of benefit plans in accordance with accepted principles of risk assessment. 29 C.F.R. Pt. 1630.16(f). This was exactly the point of the questions asked here.

None of the questions asked were inconsistent with Minnesota state law. Indeed, such questions are expressly permitted by Minn. Stat. § 62L.03, subd. 4: "Health carriers may collect information relating to the case characteristics and demographic composition of small employers, as well as health status and health history information about employees, and dependents of employees, of small

employers."[3] Plaintiff points to Minn.Stat. § 363.02, subd. 1(9)(ii) in an attempt to demonstrate that state law prohibits the inquiries involved here. This provision provides that:

> It is not an unfair employment practice for an employer, employment agency, or labor organization:
>
> with the consent of the employee, after employment has commenced, to obtain additional medical information for the purposes of assessing continuing ability to perform the job or employee health insurance eligibility[.]

Plaintiff urges the court to make a negative inference from this language, and contends that it is an unfair employment practice for an employer to demand such information in lieu of employee consent. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ.J. (Docket No. 57) at 14 ("[F]or employee health insurance underwriting purposes in Minnesota, an employer cannot demand a response to a medical inquiry, only request it."). This argument misses the mark. First, as already pointed out by the court, the Minnesota legislature specifically allows such inquiries, *see* Minn.Stat. § 62L.04, subd. 4, and nowhere in the unfair discriminatory practices section of the MHRA, *see* Minn. Stat. § 363.03, are such inquiries prohibited in the context of securing group health insurance coverage. Second, even if Minn.Stat. § 363.02, subd. 1(9)(ii) does require employee consent, it does so only in the context of assessing continuing ability to perform a job or employee health insurance eligibility.[4] In this case, the questions were not asked to assess plaintiff's ability to perform his job. Further, there is no indication that plaintiff's eligibility for employee health insurance was endangered by his potential answers to the questions. His eligibility was threatened

---

3. The St. Paul office of defendant is considered a "small employer" as defined by Minn.Stat. § 62L.02, subd. 26(a):

 "Small employer" means ... a person, firm, corporation, partnership, association, or other entity actively engaged in business ... that employed no fewer than two nor ... more than 50 current employees on business days during the preceding calendar year.

At the time in question, defendant's St. Paul office employed 37 people. Exhibit F to Def.'s Mem. in Support of its Mot. for Summ.J. (Docket No. 58).

4. The court notes that Minn.Stat. § 363.02, subd. 1(9)(ii) lists a number of other situations where additional medical information may be sought. No rational argument can be made, however, that one of these other situations applies here.

only to the extent he refused to answer the questions.

There is also no evidence in the record to suggest that the inquiries made of plaintiff were a subterfuge to evade the purposes and protections of the ADA. The questions were part of the routine procedures undertaken by HealthPartners in assessing the risks involved in insuring a group of employees. Such questions are permitted by the ADA, and the court finds no violation of any statutory provision.[5]

Count IV of the Second Amended Complaint also contains an allegation that defendant failed to treat employee medical information as confidential records, in violation of 42 U.S.C. § 12112(d).[6] *See* Second Amended Complaint (Docket No. 47) at ¶ 51. Plaintiff alleges that he observed employee health insurance applications on or around the desk of Debbie Carroll, secretary to the President of defendant's St. Paul office, and facts about co-plaintiff Vieau's hospitalization were communicated to other employees. Plaintiff contends that even if Carroll asked employees to put their completed health insurance forms in an envelope, a jury should decide whether this is an appropriate treatment of confidential medical records.

The ADA, at 42 U.S.C. § 12112(d)(4)(C), provides that information regarding the medical condition or history of an employee, obtained as a result of an acceptable examination or inquiry,[7] are subject to the confidentiality provisions of 42 U.S.C. § 12112(d)(3)(B)–(C), including collection and maintenance on separate forms and in separate medical files, treatment as confidential medical records, and use only in accordance with the strict tenets of the ADA.

■ Plaintiff's claim fails because the statutory protections cited by him are not applicable in this case, where current employees of defendant were asked health status and history questions in conjunction with the acquisition of group health insurance. The ADA's confidentiality provisions are applicable to only those inquiries made under the conditions outlined in 42 U.S.C. § 12112(d)(4)(B), none of which are present here.

■ Even if these protections were applicable, plaintiff has failed to demonstrate that there was any breach of confidentiality. Despite plaintiff's general allegations, he has failed to point to any record evidence to support his claims. While in his deposition plaintiff testified that he was concerned with health insurance forms being left on Carroll's desk, he was unable to specifically identify any forms he saw other than the "edge" of his own, nor could he recall a single medical condition that any employee disclosed on any form. Deposition of Michael Barnes, Exhibits to Def.'s Mem. in Support of its Mot. for Summ.J. (Docket No. 58) at 86–90. Indeed, plaintiff is unaware if anyone disclosed any medical conditions on the forms submitted. *Id.* at 90. Further, plaintiff could not identify a single employee of defendant who had obtained any information regarding plaintiff's medical history. *Id.* at 408. The only form whose contents were known to plaintiff was his own, and on that form he failed to disclose any medical conditions. Because plaintiff has failed to point to any record evidence that the medical information of any employee of defendant was improperly disclosed to anyone, summary judgment is also appropriate on this portion of Count IV of the Second Amended Complaint.

---

5. Given this disposition, the court need not consider defendant's argument that the medical inquiries were job related and consistent with business necessity, thus making them permissible under 42 U.S.C. § 12112(d)(4)(A) and (B).

6. The Second Amended Complaint also alleges that by failing to treat employee medical information as confidential records defendant violated Minn.Stat. § 363.02, subd. 1(9). Plaintiff, however, has not pursued this claim and it is no longer before the court.

7. 42 U.S.C. § 12112(d)(4)(B) provides that "[a] covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program made available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions."

## 2. Retaliation in Violation of the ADA and MHRA (Count II)

Count II of the Second Amended Complaint alleges that defendant "terminated plaintiff Barnes in retaliation for opposing Benham's practice of illegally requiring Benham employees to disclose medical information as well as their practices of illegally disseminating employee medical information and failing to keep lawfully received information confidential." Second Amended Complaint (Docket No. 47) at ¶ 44. Plaintiff claims his termination was in violation of the ADA, 42 U.S.C. §§ 12203(a), and the MHRA, Minn.Stat. § 363.03, subd. 7.

◼ The ADA prohibits retaliation or discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The MHRA contains a similar prescription. See Minn.Stat. § 363.03, subd. 7. The standards to be applied under the ADA and MHRA to plaintiff's retaliation claim are identical. See Breiland v. Advance Circuits, Inc., 976 F.Supp. 858, 865 (D.Minn.1997) (utilizing same standard where retaliation claim was based on both ADA and MHRA).

◼ To establish a prima facie case of retaliation, plaintiff must demonstrate: 1) that he engaged in statutorily protected activity; 2) an adverse employment action; and 3) a causal connection between the adverse employment action and the protected activity. Kiel v. Select Artificials, Inc., 142 F.3d 1077, 1080 (8th Cir.1998); Montandon v. Farmland Industries, Inc., 116 F.3d 355, 359 (8th Cir.1997); Evans v. Kansas City, Mo. School Dist., 65 F.3d 98, 100 (8th Cir.1995), cert. denied, 517 U.S. 1104, 116 S.Ct. 1319, 134 L.Ed.2d 472 (1996); Hubbard v. United Press Intern., Inc., 330 N.W.2d 428, 444 (Minn.1983). If plaintiff makes this prima facie showing, the defendant may rebut the plaintiff's case by advancing a legitimate, nonretaliatory reason for the adverse employment action. St. Mary's Honor Center. v. Hicks, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); Kiel, 142 F.3d at 1080; Montandon, 116 F.3d at 359. In a case where the defendant proffers such a legitimate, nonretaliatory reason, the burden shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for illegal retaliation. Id. See also Breiland, 976 F.Supp. at 865 (reviewing framework for analyzing retaliation claims).

◼ Protected activity includes opposing employer conduct that is indeed unlawful. In addition, an employee's activity is protected if the employee can show a good faith reasonable belief that his employer engaged in a discriminatory employment practice. Evans, 65 F.3d at 100 (citing Sisco v. J.S. Alberici Constr. Co., Inc., 655 F.2d 146, 150 (8th Cir.1981), cert. denied, 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982)). While plaintiff must have at least a reasonable belief that the practice opposed was unlawful, he " 'cannot avoid scrutiny of his claims' merely by claiming such a belief." Montandon, 116 F.3d at 355 (quoting Evans, 65 F.3d at 101). The court must also consider whether plaintiff's conduct "was so disruptive, excessive, or 'generally inimical to [the] employer's interests ... as to be beyond the protection' of the ADA." Kiel, 142 F.3d at 1080 (quoting Kempcke v. Monsanto Co., 132 F.3d 442, 445 (8th Cir.1998)).

◼ Defendant concedes that plaintiff's discharge constitutes an adverse employment action, but argues that plaintiff did not engage in nor was his discharge causally connected to any statutorily protected activity. As the court has already discussed, plaintiff did not engage in statutorily protected activity. As the medical inquiries in question here were entirely lawful, plaintiff's refusal to answer such questions is not protected. Nor does the court find that plaintiff acted under a good faith reasonable belief that defendant was engaging in an unlawful practice. Plaintiff testified at his deposition that he refused to talk to the insurance company because "I thought it was a violation of my privacy, and completely unnecessary for what was being done." Deposition of Michael Barnes, Exhibits to Def.'s Mem. in Support of its Mot. for Summ.J. (Docket No. 58) at 116. In addition, plaintiff provided

the following answers to questions posed to him during his deposition:

Q. When you say you thought it was a violation of your privacy then, you were speaking of your own kind of Michael Barnes' idea of what privacy is. You're not referring to some legal obligation or some legal violation of your privacy, are you?

[objections omitted]

A. I'm not learned in the law, and I don't know the legal situation. I just thought it was the wrong thing to do, and it was unnecessary.

Q. At the time you didn't assert though that you thought it was illegal in any way, did you?

A. I did not tell them that I thought it was illegal.

Q. Did you believe it was illegal?

A. I certainly hoped it was illegal.

Q. That's not the question. Did you believe it was illegal?

[objection omitted]

A. Yes.

Q. On what basis did you believe it was illegal?

A. Simply my own reasoning that I hoped it was illegal, so I believed it was illegal. I did not know if it was illegal.

Q. You hadn't read anything that told you that it was illegal, right?

A. No

Q. And you testified that no lawyer ever told you that it was illegal, right?

A. That's correct.

*Id.* at 117–118. Plaintiffs answers indicate that he had no basis, other than his own hope, reasoning, and sense of right and wrong that the questions being asked of him were illegal. These are wholly inadequate to constitute a good faith reasonable belief that defendant engaged in a discriminatory employment practice. In addition, plaintiff suggested he would sign a release allowing the insurance providers access to his medical records. *Id.* at 312. If plaintiff had reasonably believed that the questions asked of him were illegal, there is no reason he would authorize the release of his records, thereby disclosing medical information not even requested by the underwriters.

Further, the court finds that plaintiff's refusal to answer the questions on the Health-Partners application was unreasonably disruptive to defendant's interests. Plaintiff's refusal to cooperate and provide the requested information prevented all of defendant's St. Paul employees from acquiring a more beneficial group health insurance policy. For these reasons, summary judgment on plaintiff's claims in Count II of the Second Amended Complaint is appropriate.

**3. Unlawful Interference, Coercion, and Intimidation in violation of the ADA (Count III)**

Count III of the Second Amended Complaint alleges that "by demanding that plaintiff Barnes provide confidential medical information as a term or condition of his employment and by subsequently terminating him, Defendant unlawfully used interference, coercion, and intimidation to prevent Plaintiff from exercising his right not to disclose confidential medical information that was not job related or consistent with business necessity." Second Amended Complaint (Docket No. 47) at ¶ 48. Plaintiff alleges that defendant's actions violated the ADA, which provides that:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b).

Plaintiff claims he had a right to not disclose confidential medical information that was not job related or consistent with business necessity. The court notes that 42 U.S.C. § 12203(a) and (b), the retaliation and interference protections, are not "standalone" provisions. Rather, these protections are "conditional upon and subject to the substantive content of [the] ADA's guaranties . . . contained elsewhere in the statute." *Brahney v. Cameron*, 1998 WL 355433 at *1 (N.D.Ill. June 26, 1998). Most of the cases

interpreting § 12203 are "retaliation" cases of the type discussed above. The language of the statute and what case law there is, however, make clear that to establish a violation of § 12203(b), a plaintiff must show that when the interference, coercion, or intimidation took place they were exercising or enjoying a right protected by the ADA. *Wray v. National Railroad Passenger Corp.*, 10 F.Supp.2d 1036, 1040 (E.D.Wis.1998) (citing *Roth v. Lutheran General Hosp.*, 57 F.3d 1446 (7th Cir.1995)).

 As the court has already made abundantly clear, in refusing to answer the questions involved, plaintiff was not exercising any right protected by the ADA. In addition, plaintiff was provided an opportunity to avoid disclosing any medical information if he was willing to agree to waive the right to apply for group health insurance coverage. Plaintiff himself admits that this option to waive benefits was an alternative to being terminated, and that he would not have been fired had he opted out of the group plan. *See* Deposition of Michael Barnes, Exhibits to Def.'s Mem. in Support of its Mot. for Summ.J. (Docket No. 58) at 483. Only to the extent defendant desired to participate in defendant's group health insurance plan was disclosure needed. Thus, defendant has failed both to show that he was exercising a right protected by the ADA and that he was coerced or intimidated into providing confidential medical information as a condition of keeping his job. Summary judgment will therefore be granted on this claim as well.

### c. Defendant's Motion for Sanctions

Defendant also moves, pursuant to 28 U.S.C. § 1927, for sanctions. Defendant contends that plaintiff's remaining allegations were supported neither by law or the evidence, and as a result defendant has been forced to expend tens of thousands of dollars defending itself against frivolous claims. Defendant contends plaintiff should have withdrawn the claims discussed in the extant motion for summary judgment.

 Title 28 of the United States Code provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Sanctions are called for by § 1927 when an attorney unreasonably and vexatiously multiplies the proceedings. The standard to be applied in such a case is somewhat unclear. *See O'Connell v. Champion Intern. Corp.*, 812 F.2d 393, 395 n. 2 (8th Cir.1987) ("We do not hold that § 1927 contains only an objective standard, as opposed to both an objective and subjective standard. The words of the statute require unreasonable and vexatious conduct.... Whether this requires a finding of bad faith in addition to unreasonable conduct is a question not before us."). At least one Eighth Circuit panel, however, has indicated that the language of § 1927 requires both a finding of objectively unreasonable behavior and a finding of bad faith. *N.A.A.C.P.—Special Contribution Fund v. Atkins*, 908 F.2d 336, 340 (8th Cir.1990). *See also, Joseph V. Edeskuty & Associates v. Jacksonville Kraft Paper Co., Inc.*, 702 F.Supp. 741, 746 (D.Minn.1988) (denying sanctions pursuant to § 1927 because "[t]he record does not reflect bad faith on the part of . . . counsel[.]").

 While the court laments counsel's pursuit of the nonmeritorious claims discussed above, sanctions are not called for in this case. There is no evidence that counsel engaged in dilatory or vexatious tactics, nor has counsel disobeyed any court orders. The court recognizes the fine line counsel must navigate between her duty to her client and her duty to the court. Although plaintiff's claims are without merit, the conduct at issue here is less egregious than that sanctioned by the court in other cases. The court regrets the costs incurred by defendant in having to bring its motion for summary judgment; however, as recognized by other courts, such costs are common to all litigants forced to defend a lawsuit. Defendant's motion for sanctions will therefore be denied.

## CONCLUSION

Plaintiff has failed to demonstrate that defendant violated any part of the Americans with Disabilities Act or the Minnesota Human Rights Act when plaintiff was asked to disclose certain medical history information in conjunction with defendant's application for group health insurance benefits. Summary judgment on plaintiff's remaining claims in the Second Amended Complaint is therefore warranted. Accordingly, based on a review of the file, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The motion of plaintiff Michael Barnes to strike the affidavit of Kathleen Jackson is denied;

2. The motion of defendant The Benham Group, Inc., for summary judgment on the remaining counts of the Second Amended Complaint is granted;

3. The motion of defendant The Benham Group, Inc., for sanctions is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**